UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED RENTALS, INC. and UNITED RENTALS (NORTH AMERICA), INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> MICHAEL ADAMS, <br><br> *Defendant*. | Civil No. 3:19cv1210 (JBA) <br><br> September 23, 2021 |

**RULING ON CONTEMPT SANCTIONS**

Plaintiffs United Rentals, Inc. and United Rentals (North America), Inc. filed this diversity action alleging breach of a confidentiality and non-compete agreement by Defendant Michael Adams, Plaintiffs' former employee. After obtaining a Default Judgment [Doc. # 16] and Permanent Injunction Order [Doc. # 15] against Defendant, Plaintiffs moved to hold Defendant in contempt of the Permanent Injunction Order [Doc. # 23]. The Court granted Plaintiffs' motion [Doc. # 36], and following a hearing held on September 16, 2021, the Court has determined appropriate sanctions for Defendant's conduct.

**I.    Procedural History**

Plaintiffs commenced this litigation against Defendant, whom Plaintiffs had employed from March 2017 through March 2019, seeking to enforce a non-compete agreement that Defendant signed electronically on December 17, 2018, on which his transfer from Plaintiffs' Peoria, Illinois location to Plaintiffs' Springfield, Illinois. location was contingent. (*See* Order Granting Plaintiffs' Mot. for Order of Contempt ("Contempt Order") [Doc. # 36] at 2.) Plaintiffs claimed that sometime after Defendant terminated his employment with them, he became employed by Luby Equipment Services ("Luby" or "LES")—a competitor of Plaintiffs

1

located within fifty miles of Plaintiffs' Springfield, Illinois location—in violation of the non-compete agreement. (Contempt Order at 2.) Defendant was served with the Complaint and Summons [Doc. # 10] on August 11, 2019, but he neither appeared nor responded. Following the passage of the prescribed date to answer, on Plaintiffs' motion [Doc. # 11], the clerk entered Default against Defendant [Doc. # 12]. No motion to set aside the Default against Defendant has ever been filed.

Thereafter, Plaintiffs sought a Default Judgment and Permanent Injunction against Defendant [Doc. # 13], which the Court granted on April 23, 2019 [Doc. # 15]. The Court concurrently issued a Permanent Injunction Order enjoining Defendant for one year from the date of the Order from "[d]irectly or indirectly being employed or retained by a competitor—including but not limited to, Luby Equipment Services—in the Restricted Area, or rendering to it any consulting or other services or any advice, assistance or other accommodation." (Ruling on Mot. for Default J. [Doc. # 15] at 2.)

After Plaintiffs gave notice on August 21, 2020 to Defendant and Luby of the Court's Permanent Injunction Order, the Court granted Plaintiffs' motion for leave to conduct discovery in aid of a potential contempt motion [Docs. ## 16, 17]. (Contempt Order at 2-3.) And on January 22, 2021, Plaintiffs moved for an Order of Contempt against Defendant for noncompliance with the Permanent Injunction Order by his alleged continued employment at Luby within the proscribed geographical area [Doc. # 23]. The motion was referred to Magistrate Judge S. Dave Vatti for hearing [Doc. # 25]. Following the hearing, Magistrate Judge Vatti filed his Certification of Facts and Recommended Ruling[1] pursuant to 28 U.S.C.

---

[1] Based on his certified facts, the Magistrate Judge made four recommendations if this Court entered a finding of contempt: (1) that Plaintiffs receive reasonable attorneys' fees and costs in the amount of $20,369.04 incurred in their investigation and prosecution of Defendant's contempt, in addition to the $2,807.51 previously awarded; (2) that the Court enjoin Defendant for another twelve months from the date of the Court's entry of an Order of Contempt; (3) that the Court modify the terms of the Permanent Injunction to provide that

§ 636(e) [Doc. # 35]. The Court considered the Magistrate Judge's Certification of Facts and Recommended Ruling[2] and granted Plaintiff's Motion for Contempt on August 31, 2021, (*see generally* Contempt Order [Doc. # 36]), basing its decision on substantial evidence of Defendant's continued employment with Luby.

On September 16, 2021, the Court held a hearing to determine the appropriate sanctions against Defendant for his contumacy and for Luby to show cause to demonstrate why the Permanent Injunction Order should not be extended to Luby to enjoin it from aiding and abetting any future civil contempt by Defendant. (*Id.* at 6-7; *see also* Order to Show Cause [Doc. # 37].) Defendant has neither appeared nor responded to these proceedings, and he was not present for the September 16, 2021 hearing. Likewise, Luby did not appear for the hearing. Instead, counsel for Luby wrote to the Court and Plaintiffs representing that Luby has no relationship—"business or otherwise"—with Defendant as of the date of the letter, September 15, 2021.  (*See* Letter to the Court, Court Ex. A.)

**II.     Discussion**

Civil contempt sanctions serve two purposes: to compel obedience to a lawful order and to provide compensation to a complaining party. *N.Y. State Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989). Accordingly, "civil contempt proceedings must be 'remedial

---

"no third party with notice of this Order, including but not limited to, Luby Equipment Services (upon notice), shall aid, abet or assist Defendant in the commission of any future violation or contempt" of the Court's Order; and (4) that the Court consider a further monetary penalty against Defendant as a sanction for Defendant's continued contempt by means of a supplemental judgment. (Certification of Facts [Doc. # 25] at 11.)

[2] There was some confusion at the hearing as to whether the Court had adopted the Magistrate Judge's recommended sanctions in its Contempt Order. However, the Contempt Order found only that Defendant was in contempt of the Court's Permanent Injunction Order. (Contempt Order at 6 ("Based on Plaintiffs' unopposed submission in support of the Motion for Contempt and the findings and recommendations of the Magistrate Judge, the Court finds Defendant to be in contempt of the Court's injunction order.").) The Contempt Order reserved any decision on sanctions until the September 16, 2021 hearing. (*Id.*)

and compensatory, [but] not punitive.'" *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989) (quoting *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467, 469 (2d Cir. 1958)); *see also Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004) ("The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged.").

"In a civil contempt proceeding, the district court has 'broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions[.]'" *EEOC v. Local 28 of Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001) (quoting *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 857 (2d Cir. 1984)). Monetary sanctions for civil contempt traditionally have been awarded to compensate the plaintiff for injuries caused by past noncompliance or to prevent continued disobedience. *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 56-57 (2d Cir. 1982), *cert. denied*, 459 U.S. 832 (1982). When imposing coercive monetary sanctions on a party for civil contempt, a court determines "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)); *see also Broker Genius Inc. v. Seat Scouts LLC*, 17-Cv-8627 (SHS), 2019 WL 2462333, at *1 (S.D.N.Y. June 13, 2019) (awarding compensatory sanctions but not coercive sanctions because "[t]he Court believe[ed] that defendants [would] comply with the preliminary injunction going forward."). At bottom, however, the "overriding consideration" is whether a coercive sanction is reasonably set in relation to the facts and is not arbitrary. *Perfect Fit Indus., Inc.*, 673 F.2d at 57.

Monetary sanctions for civil contempt may be awarded to a complaining party to compensate that party when legal damages are proven or that party demonstrates that the contemnor profited from the violation. *Manhattan Indus., Inc.*, 885 F.2d at 6 (citing *Leman v. Krentler–Arnold Hinge Last Co.*, 284 U.S. 448, 455-56 (1932)). In addition, the Court may award the reasonable costs of prosecuting the contempt, including attorneys' fees, if the violation of the decree is found to have been willful. *See, e.g.*, *Manhattan Indus., Inc.*, 885 F.2d at 8; *see also Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) ("Our case law is clear that a district court may not impose attorney's fees as a sanction without first making an explicit finding that the sanctioned party, whether a party or a party's counsel, acted in bad faith in engaging in the sanctionable conduct."). *But see Weitzman v. Stein*, 98 F.3d 717 (2d Cir. 1996) ("[W]hile willfulness may not necessarily be a prerequisite to an award of fees and costs [following a contempt finding on attorney], a finding of willfulness strongly supports granting them."). The purpose of awarding attorneys' fees to the complaining party is to compensate fully that party for the trouble of prosecuting the contempt. *Weitzman*, 98 F.3d at 719; *see also Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) ("[T]he plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful.").

Under the circumstances presented at the hearing, the Court declines to impose coercive sanctions. In its Contempt Order [Doc. # 36], the Court found Defendant in contempt of the Court's Permanent Injunction Order [Doc. # 15] due to his employment with Luby. Since then, Luby represents that Defendant no longer has a relationship with Defendant. (*See* Letter to the Court, Court Ex. A.) Thus, it appears that Defendant no longer continues to violate the Permanent Injunction Order, given that Defendant's employment relationship with Luby was the basis for the Court's finding of contempt. (*See* Contempt Order at 6

5

("Plaintiffs' evidence of Defendant's employment with Luby within the Restricted Area and Defendant's failure to present evidence to the contrary when given the opportunity, taken together, provide the Court reasonable certainty that Defendant continues to violate the Court's Permanent Injunction Order.").) Accordingly, contempt sanctions aimed at enforcing Defendant's compliance are no longer necessary, as there is no threat of "continued contumacy" and any coercive sanction imposed by the Court would not have its desired effect.[3] *See Dole Fresh Fruit Co.*, 821 F.2d at 110; *see also Broker Genius Inc.*, 2019 WL 2462333, at *2 (S.D.N.Y. June 13, 2019) (concluding that coercive sanctions were not warranted because "[t]he Court believes that defendants [would] comply with the preliminary injunction going forward").

Coercive sanctions notwithstanding, the Court awards reasonable attorneys' fees and costs as recommended by the Magistrate Judge to compensate Plaintiffs for their efforts in litigating these contempt proceedings[4] because Defendant's conduct was willful, *i.e.*, he had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and made no effort to comply. *See King v. Allied Vision Ltd.*, 919 F. Supp. 747, 753 (S.D.N.Y. 1996) (defining "willfulness" for the purposes of awarding attorneys' fees as a contempt sanction); (*see also* Order of Contempt at 5-6 ("Despite receiving notice, Defendant has never appeared or disputed the factual findings by the Magistrate Judge.").) And, until very

---

[3] At the September 16, 2021 hearing, Plaintiffs urged the Court to impose coercive sanctions because, irrespective of Defendant's discontinued employment with Luby, Defendant's history of disregard for the Court's Permanent Injunction Order provides a basis for a finding that Defendant may continue to violate that Order. That Defendant *may* engage in contumacious conduct in the future, however, provides no basis here for a coercive sanction because it leaves the Defendant with little ability to avoid the sanction by demonstrating compliance. *See Terry*, 886 F.2d at 1351 (noting that a civil contempt penalty may still be avoided by the party on whom the Court imposes sanction by that party's performance of the act required by the Court).

[4] Magistrate Judge Vatti did not find evidence that Plaintiffs suffered monetary losses beyond attorneys' fees in his Certification of Facts.

recently, he remained employed by Luby in violation of the Permanent Injunction order. (*See id.* at 6; *see also* Letter to the Court, Court Ex. A.) Defendant acted in seemingly total disregard for the Court's Permanent Injunction Order. Therefore, the Court concludes that Defendant's violation of the Permanent Injunction Order was willful and awards Plaintiffs attorneys' fees and costs in the amount of $20,369.04.[5]

In addition to the monetary sanction, the Court enjoins Defendant to comply with the non-compete agreement for an additional twelve months from the date of this Order pursuant to the terms described below.

### III. Conclusion

In sum, Plaintiffs are awarded $20,369.04 in costs and fees as compensation for litigating the contempt proceedings. Additionally, it is hereby ordered that Defendant is hereby enjoined for one year from the date of this order, under the terms of the agreement between Defendant and Plaintiffs from:

(1) Directly or indirectly being employed or retained by a competitor—including, but not limited to, Luby Equipment Services—in the Restricted Area, or rendering to it any consulting or other services or any advice, assistance or other accommodation. Pursuant to the non-compete agreement and for purposes of this Order, the Restricted Area means (a) a 50-mile radius from Plaintiffs' Springfield, Illinois, branch located at 1600 South Dirksen Pkwy, Springfield, Illinois; (b) the geographic area of Defendant's responsibilities under Plaintiffs' employ, as measured by the two-year period prior to his separation from Plaintiffs; and (c) the geographic area in which or about which Defendant had involvement in the development, review, use, presentation, or implementation of Confidential

---

[5] This figure is in addition to the $2,807.51 in attorneys' fees and costs the Court previously awarded as part of the Default Judgment [Doc. # 15] entered on April 23, 2020.

Case 3:19-cv-01210-JBA   Document 46   Filed 09/23/21   Page 8 of 8

Information during the two-year period preceding the termination of his employment;

(2) Directly or indirectly soliciting or accepting the business of, calling upon, contacting or communicating with any person or entity, or affiliate of any such person or entity, who or which is or was a customer, business prospect or other person who had a business relationship with Plaintiffs resulting in and/or for the purpose of providing or obtaining any product or service reasonably deemed competitive with any product or service then offered by Plaintiffs; provided, however, that this limitation shall apply only with respect to persons or entities with whom Defendant had a business relationship, with whom he communicated, with whom he transacted business, or about whom he had confidential information while employed at Plaintiffs; and

(3) No third party with notice of this Order, including but not limited to, Luby Equipment Services (upon notice), shall aid, abet or assist Defendant in the commission of any future violation or contempt of this Court's Order.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of September 2021

8